■ 120 BAY STREET REALTY CORP., Appellant, v CITY OF NEW YORK, Respondent.—In an action, *inter alia,* to declare whether the defendant occupies certain premises as a month-to-month tenant or under a valid and binding lease, plaintiff appeals from an order of the Supreme Court, Richmond County, dated February 16, 1977, which, *inter alia,* granted defendant's motion for summary judgment and declared that it is a lawful tenant of the premises under a valid binding lease, dated October 4, 1965, and its renewal, which expires on March 31, 1986. Order affirmed, with $50 costs and disbursements. In conformity with a resolution of the Board of Estimate (the board), the defendant City of New York (the city) leased the subject premises from the plaintiff landlord for a period of 10 years, ending March 31, 1976, with an option to renew on the same terms. the lease was silent as to the time or manner in which the option was to be exercised. By letter dated June 2, 1975, the Director of the Bureau of Leasing of the city's Department of Real Estate advised the plaintiff of the city's intention to exercise the option to renew. After the original term of the lease expired, and a year after receiving notice of the exercise of the option, the plaintiff learned that there had been no resolution of the board approving renewal. The plaintiff notified the city that the renewal notice was void and served it with a notice of claim of this action. Assuming that under the Administrative Code of the City of New York (§ 67(1)-1.0) and the New York City

Charter (§ 1603), the exercise of the option to renew requires the approval of the board, the plaintiff conceded on the argument of the appeal that one dealing with the city's agents is chargeable with notice of the limitations on their power (see *Oswego Falls Corp. v City of Fulton,* 148 Misc 170, affd 241 App Div 650). Being so charged, the plaintiff's silence and failure to make relevant inquiries during the almost 10-month period between the sending of the notice of the city's intention to renew and the expiration of the original term of the lease constituted a waiver of the city's default, if any, in having failed to secure the board's approval (see *Modlin v Town & Country Tux,* 42 AD2d 586). The lease of a building for welfare services is plainly within the scope of the city's authority. The subsequent resolution by the board was therefore a valid ratification of the notice of the city's intention to renew (40 NY Jur, Municipal Corporations, § 818; cf. *Seif v City of Long Branch,* 286 NY 382, 386; see, also, *J. N. A. Realty Corp. v Cross Bay Chelsea,* 42 NY2d 392). Hopkins, J. P., Suozzi and Mollen, JJ., concur; Shapiro, J., dissents and votes to reverse the order appealed from and to grant summary judgment to the plaintiff declaring that the defendant did not properly exercise its option to renew the lease and occupies the subject property as a tenant from month to month, with the following memorandum: I completely disagree with the reasoning of my learned colleagues. The original lease was entered into pursuant to a resolution of the Board of Estimate dated August 26, 1965. The lease provided that: "Tenant may, at its option, renew this lease for a further term of ten (10) years, at the same rental and upon all of the other terms and conditions contained herein." It also contained the following holdover provision if the renewal option were not exercised: "V. Not to hold Tenant liable as a holdover tenant should it continue to occupy the demised premises or any portion thereof after the expiration of the term of this lease but in any such event, Tenant shall be deemed to be a tenant from month to month at the same rental as that of the last month of the demised term, and the liability of Tenant shall in no event be greater than that of a tenant from month to month, any law to the contrary notwithstanding." The original lease by its terms expired on March 31, 1976. By letter dated June 2, 1975 the Director of the Bureau of Leasing of the city's Department of Real Estate notified the plaintiff "that the City of New York will exercise its option to renew the lease". However, he was not authorized by the Board of Estimate to send such a letter or to renew the lease 'for another 10 years and, as Special Term, although coming to an erroneous conclusion on the basic issue, properly said: "the original resolution authorized a lease containing an option to renew clause and did not authorize the automatic renewal of the lease per se" and "Therefore, Board of Estimate approval was required to renew that lease." Although the original lease expired on March 31, 1976, the Board of Estimate did not adopt a resolution authorizing its renewal until September 16, 1976. In its entirety, the resolution reads: "Resolved, By the Board of Estimate that the Commissioner of Real Estate on behalf of the City, is hereby *authorized* to execute *a renewal of the lease* to the City of New York of the premises consisting of an entire two story and basement building, containing an area of 12,600 square feet of floor space, exclusive of basement space, in the building located at *95 Central Avenue, Borough of Staten Island* (Block 5 and Lot 13) *for use by the Human Resources Administration* as a Staten Island Income Maintenance Center, from April 1, 1976 to March 31, 1986 *at an annual rental of $40,100,* payable in equal monthly installments at the end of each month. The renewal of this lease shall be on the same terms and conditions as given in the original lease, including but not limited to:

the Landlord to pay taxes, assessments, make all outside and inside repairs, including the roof, except when caused by Tenant's (City's) negligence, maintain the air-conditioning and heating units. A certified copy of this resolution when executed by the parties hereto shall be deemed a renewal of the lease. The Board of Estimate deems the said rent fair and reasonable and that it would be in the best interest of the City of New York that the rent of these premises for the purpose specified, should be paid. Landlord: 120 Bay Street Realty Corp. c/o Mrs. Annabelle C. Diamond, 15 Beach Street, Stapleton 4, Staten Island, or Owner of Record." It is thus manifest that, between the time of the expiration of the original lease on March 31, 1976 and the adoption of the renewal resolution there was no lease in existence between the parties and that the city's sole obligation as a tenant during that period pursuant to the very provisions of paragraph V of the original lease was as "a tenant from month to month at the same rental as that of the last month of the demised term, and the liability of Tenant shall in no event be greater than that of a tenant from month to month, any law to the contrary notwithstanding." Despite the unauthorized letter from the director, it is obvious that the city was under no binding obligation under a renewed 10-year lease at any time between March 31, 1976 and September 16, 1976 and that during that period, as a month-to-month tenant, it could have removed itself from the premises at the end of any month without further obligation. Thus, the determination of the majority that there was a valid exercise of the option is tantamount to leaving the plaintiff "twisting in the wind" while the city makes up its mind whether it will remain a tenant from month to month or become a 10-year lessee. Special Term, in granting the city's motion for summary judgment, said that although the "Board of Estimate approval was required to renew that lease"—"In light of all the circumstances, however, this oversight on the part of the City, cannot be said to be of such magnitude as to work a revocation of the lease renewal." I cannot follow that line of reasoning. We are not here faced with the question of "a revocation of the lease renewal", but with a failure to exercise the option to renew. The court completely overlooked, or disregarded, the fact that the city had a complete and perfect defense if the landlord plaintiff had, before the city adopted its resolution, sought a declaration that the option to renew had been exercised, for the court acknowledged that Board of Estimate approval to renew the lease was required. The majority of this court, in upholding the order of Special Term, argues "that one dealing with the city's agents is chargeable with notice of the limitations on their power" and that "Being so charged, the plaintiff's silence and failure to make relevant inquiries during the almost 10-month period between the sending of the notice of the city's intention to renew and the expiration of the original term of the lease constituted a waiver of the city's default, if any, in having failed to secure the board's approval". I cannot follow that line of reasoning either. In the first place, the plaintiff did not have to investigate the director's authority; it was justified in assuming that he was acting upon the authorization of a Board of Estimate resolution. However, when it found out that such was not the fact, it promptly notified the Commissioner of Real Estate in writing that it considered the city a tenant from month to month "in accordance with paragraph V of the aforesaid lease". It went even further and in its communication said: "In the event that you do not agree with this construction, you are requested to notify the undersigned [the plaintiff] prior to July 31st, 1976, of the authority of your position." There was no response to that letter. How a waiver can be spelled out of that state of facts, as the majority

does, I am at a loss to understand. The further contention of the majority that "The subsequent resolution by the board [adopted on Sept. 16, 1976] was therefore a valid ratification of the notice of the city's intention to renew" is clearly a *non sequitur,* for it is negatived by the resolution itself. There is nary a word in the resolution that it was adopted to confirm the director's letter, nor is that letter even mentioned in the resolution, nor does the resolution purport to ratify any past acts. On the contrary, it resolves, in the present tense, "that the Commissioner of Real Estate * * * is hereby authorized to execute a renewal of the lease to the City" and that *"A certified copy of this resolution when executed by the parties hereto shall be deemed a renewal of the lease"* (emphasis supplied). There is no contention that the resolution was even ever signed by the city much less "executed by the parties hereto". Thus, even under the terms of the resolution, considering it otherwise to be valid, there was no renewal of the lease. But the clinching argument to establish the invalidity of the position taken by the majority, it seems to me, is to ask what the plaintiff's rights would have been if the Board of Estimate had never adopted its resolution of September 16, 1976. Would there have been a renewal for 10 years upon which the plaintiff could successfully maintain a law suit solely by virtue of the commissioner's letter? The answer seems obvious.* I therefore vote to reverse the order appealed from and to grant summary judgment to the plaintiff declaring that so long as the city occupies the premises it does so as a tenant from month to month and that the city did not properly exercise its options to renew the lease for a second 10-year period.

---

* Plaintiff's secretary, in her affidavit in support of plaintiff's cross motion for summary judgment and in opposition to defendant's motion for summary judgment, states, without contradiction, that the April, 1976 rent had not been paid, that a nonpayment summary proceeding had been instituted, and that it had been the city's position then that it "had not renewed its lease and was a month to month tenant".